KLEINFELD, Senior Circuit Judge,
dissenting:
I respectfully dissent.
The majority concludes correctly that despite the vicious beatings Regalado-Escobar suffered, substantial evidence supported the BIA’s conclusion that he was beaten for declining to join up, not because of his political opinion, toward which the FMLN was evidently indifferent. As the majority correctly points out, “the record does not compel us to hold that Regalado was attacked on account of any principled opposition to the FMLN or its violence, rather than on account of his failure to cooperate in the FMLN’s recruitment efforts.” [1]
The majority nevertheless remands for findings on future persecution. This makes no sense, since “Regalado offered no evidence to show that his attackers were even aware of his political beliefs.”[2] The majority concludes that the BIA has failed to understand that opposition to violence may itself be a political opinion for which someone might be persecuted. That would be an irrelevant inquiry on this record, which doubtless explains why the BIA articulated no philosophical views on the question. Neither they nor we need reach the issue of when, if ever, views on violence constitute a political opinion. Once absence of a factual nexus connecting the beatings to Regalado-Escobar’s political opinion was established by substantial evidence on the record taken as a whole, there was no good reason for the BIA to speculate further about such a possible nexus in general or in the future.
As we held in Zhiqiang Hu v. Holder, “the nexus inquiry and the persecution inquiry are distinct.”[3] If alleged perseeu *732 tion—whether suffered in the past or feared in the future—is not “on account of’ one of the five protected grounds, it cannot form the basis of a successful asylum claim.[4] Under the REAL ID Act, the applicant bears the burden to show nexus by showing that a protected ground was “one central reason” for his persecution.[5] Regalado-Escobar did not show that the FMLN knew of his political opinion, let alone that it was “one central reason” for their beating and threatening him. And he presented no evidence whatsoever implying that the FMLN would likely become aware of his political opinion in the future. His argument in his brief is that his “Past Persecution Also Amounts to a Well-Founded Fear of Future Persecution Based Upon His Political Opinion.” Because he has not met his burden to show a nexus connecting his political opinion to his past beatings, Regalado-Escobar has no argument regarding future persecution that the BIA needed to address.
It is hard to see why we are publishing an opinion in this case at all, except to wade into ideological speculation about whether a “strategy” of favoring or opposing violence “can constitute a political opinion that is a protected ground,” independently of the political goals meant to be advanced by the “strategy.”[6] The record does not require this speculation. Although Regalado-Escobar did not want to join the FMLN at least partly because he did not want “to burn tires in the street, also to break windows in the city,” substantial evidence, as the majority concedes, supported the BIA’s view that the FMLN did not care what his opinions were, and beat him “[bjecause [he] didn’t join their party.” This record does not require that the BIA do the case over to address whether Regalado-Escobar’s opinions about the use of violence to achieve political ends may themselves be a protected ground, because his opinions were not the reason for the beatings.
The question whether a political opinion about the use of violence in politics, independently of the political goal to be achieved, is a protected ground, will be difficult, when and if we ever have to address it. Congress just said “political opinion,” and did not specify what kind of opinion in its definition of “refugee.” If any political opinion suffices, then persecution on account of favoring violence would entitle a person to refugee status as much as persecution on account of opposing violence. Favoring violence was a popular theme in old anarchist advocacy by Johann Most and Michael Bakunin, who supported “propaganda by the deed,”[7] and remains a theme in the more modern advocacy of *733 Frantz Fanón and perhaps Edward Abbey. There has long been a romantic notion floating around in many radical movements, favoring all sorts of ends, that violence “liberates creative moral forces in human society which lead to social and national renewal.”[8] Did Congress intend to define persecuted advocates of violence as refugees?
There is no need in this case to answer that question. Without knowing that Regalado-Escobar had a political opinion, the FMLN could not and cannot engage in persecution—past or future—on account of his political opinion. We can decide whether an advocate of terror bombings persecuted for his opinion favoring violence, for example, is entitled to refugee status, when we get the case.
We should deny the petition, not remand for examination of the unnecessary and potentially thorny issue of whether refugee status on account of persecution for political opinion applies, where the opinion is not about some political end, but about violence as such.

. Maj. Op. at 730.

. Maj. Op. at 730-31.

.Zhiqiang Hu v. Holder, 652 F.3d 1011, 1020 (9th Cir.2011).

. 8 U.S.C. § 1101(a)(42) ("The term 'refugee' means ... any person a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion....”). Likewise, to be eligible for withholding of removal, an applicant must demonstrate that his "life or freedom would be threatened in [his home] country because of [his] race, religion, nationality, membership in a particular social group, or political opinion.” 8 U.S.C. § 1231(b)(3); 8 C.F.R. § 1208.16(b)(2); Zetino v. Holder, 622 F.3d 1007, 1015 (9th Cir.2010).

. 8 U.S.C. § 1158(b)(l)(B)(i) ("The burden of proof is on the applicant to establish that the applicant is a refugee, within the meaning of section 1101 (a)(42)(A) of this title. To establish that the applicant is a refugee within the meaning of such section, the applicant must establish that race, religion, nationality, membership in a particular social group, or political opinion was or will be at least one central reason for persecuting the applicant.”); see also Parussimova v. Mukasey, 555 F.3d 734, 740-41 (9th Cir.2009).

. Maj. Op. at 729-30.

. See Edmund Wilson, To the Finland Station: A Study in the Writing and Acting of History 265-288 (1940); Gerald Runkle, Anarchism: Old and New 27, 96-98 (1972).

. Fascism: An Anthology 139-140 (Nathanael Greene ed., 1968).