**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| IVETH STEPHANI OLMOS BORJA, | No. 09-72816 |
| Petitioner, | Agency No. A089-679-716 |
| v. | |
| ERIC H. HOLDER, Jr., Attorney General, | MEMORANDUM* |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted November 5, 2013

San Francisco, California

Before: TASHIMA, W. FLETCHER, and NGUYEN, Circuit Judges.

Iveth Stephani Olmos Borja, a native and citizen of El Salvador, petitions for

review of a decision of the Board of Immigration Appeals ("BIA") dismissing her

appeal from an immigration judge's decision denying her application for asylum,

withholding of removal, and relief under the Convention Against Torture ("CAT").

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

We have jurisdiction pursuant to 8 U.S.C. § 1252. We review for substantial evidence the agency's factual findings, *Hu v. Holder*, 652 F.3d 1011, 1016 (9th Cir. 2011), and we grant the petition.

An alien who qualifies as a refugee may be granted asylum. 8 U.S.C. § 1158(b)(1). A refugee is an alien who is unable to return to her home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group or political opinion." *Ding v. Ashcroft*, 387 F.3d 1131, 1136 (9th Cir. 2004) (quoting 8 U.S.C. § 1101(a)(42)(A)). The agency denied Olmos Borja's asylum application because it found that the treatment she received at the hands of the 18th Street Gang was not "on account of" one of these protected grounds.

Olmos Borja claims that she suffered persecution on account of, among other things, her membership in the particular social group of her family. The BIA acknowledged that family membership could be "ties [that] provide a sufficient basis for granting" asylum or withholding of removal, but found that Olmos Borja was unable to "distinguish her situation from that of her other family members" who remained in El Salvador after she fled, specifically her mother and father. The BIA therefore concluded that the gang's actions did not have a sufficient nexus with Olmos Borja's membership in her family group.

2

The agency's nexus determination is not supported by substantial evidence. Olmos Borja need not show that another family member was persecuted on account of a protected ground in order to establish her eligibility for asylum. Rather, she need only show that she herself was persecuted or had a well-founded fear of persecution because of her family membership. *See, e.g.*, *Kebede v. Ashcroft*, 366 F.3d 808, 812 (9th Cir. 2004) (holding that a petitioner was eligible for asylum where soldiers' statements while attacking petitioner showed a link between their assault and her family's authority and position in the previous government).

Furthermore, unless there is evidence that the family was similarly situated or subject to similar risk, the continued presence of family members in the country of origin does not necessarily rebut an applicant's claims. *See Kumar v. Gonzales*, 444 F.3d 1043, 1055 (9th Cir. 2006) (finding it irrelevant that petitioner's parents were not harmed after petitioner left India, where they were not "similarly situated"). Olmos Borja's mother was not similarly situated to Olmos Borja, and her father died of natural causes in 2008, approximately 15 months after Olmos Borja left El Salvador.

The evidence compels a conclusion that Olmos Borja both suffered past persecution and has a well-founded fear of future persecution by the gang, and that

her membership in a particular social group—a family who actively opposes the gang because its members killed Olmos Borja's sister—was at least one central reason for the gang members' actions. *See Parussimova v. Mukasey*, 555 F.3d 734, 740 (9th Cir. 2009) (holding that, following the REAL ID Act's amendments to the Immigration and Nationality Act, an asylum applicant must establish that a protected ground was or will be at least one central reason for her persecution).

Accordingly, we find Olmos Borja eligible for asylum. Because we find that Olmos Borja has established her eligibility for asylum, we need not reach her withholding of removal and CAT claims. We therefore grant the petition as to Olmos Borja's asylum claim, and remand for the Attorney General to exercise his discretion to grant asylum.

Petition **GRANTED** and **REMANDED**.

*Olmos Borja v. Holder*, No. 09-72816

TASHIMA, Circuit Judge, dissenting:

Under the REAL ID Act, we cannot reverse the factual findings of the BIA "unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B) (codifying the holding of *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992)). The majority concludes that the evidence compels a conclusion that Olmos Borja's family association was at least one central reason for her persecution by the 18th Street Gang and that she has a well-founded fear of persecution on account of her family association if she returns to El Salvador. Although the record may support such a conclusion, it does not compel it. Thus, the majority's finding that Olmos Borja is eligible for asylum fails to surmount the high bar of the REAL ID Act. I therefore respectfully dissent.

**I.**

The BIA concluded that Olmos Borja was not persecuted on account of her membership in the social group of her family. I cannot say that the evidence in the record would compel any reasonable adjudicator to reach a conclusion contrary to the one reached by the BIA.

Only two pieces of evidence support the majority's conclusion that Olmos Borja was targeted because of her family association. First, in 2005, an

unidentified individual called Olmos Borja on the cell phone that had belonged to her sister Lisseth and said, "we are going to kill you like we killed that bitch your sister was." But it is less than clear why the caller threatened Olmos Borja. It could have been because she was related to Lisseth or for a different reason – such as because she was a potential witness against the gang – and her sister's death was mentioned only to intimidate her.

Second, in November 2006, gang members threatened Olmos Borja because they were angry with her father. On that occasion, a gang member said to Olmos Borja: "Your father is not sitting well with us. He is looking at us like shit; he is looking down at us and that bothers me and you are going to foot the bill because we are the law here." Admittedly, this evidence does support the inference that Olmos Borja was threatened because of her relationship with her father. But this evidence must be viewed through the lens of the record as a whole. *See Elias-Zacarias*, 502 U.S. at 481. The record shows that Olmos Borja was personally targeted by gang members for several years, beginning before Lisseth was killed and her family became actively involved in the investigation of the murder. In that time, there is only a single incident during which the threats were connected to her relationship with her family. This single comment is, I submit, insufficient to compel the conclusion that Olmos Borja was targeted on account of her family

2

association, given that other portions of the record suggest that gang members had different reasons for targeting her.

Olmos Borja explained that Detective Escobar advised her to leave the country "because they might think that I knew things and might be a witness against them . . . ." Petitioner testified that she shared the Detective's apprehension, that "I really am afraid that they're going to harm me because of what they think."

This theory of why Olmos Borja was targeted – because she was a potential witness against the gang – is at least as plausible as the theory advanced by the majority – family membership. The record suggests that gang members did indeed believe Olmos Borja had information regarding Lisseth's death. A man associated with the gang questioned her at Lisseth's wake regarding what she knew about her sister's death and asked her "what is it that you know, who killed your sister, tell me . . . ."

Thus, substantial evidence supports the BIA's conclusion that Olmos Borja was primarily targeted because she was seen as a potential witness rather than on account of her family association and we cannot substitute our own contrary conclusion. *See Elias-Zacarias*, 502 U.S. at 481. Given the paucity of evidence on the gang members' motivation for their threats, I conclude that we cannot

3

disturb the BIA's conclusion that Olmos Borja's family association was not a central reason for her persecution.

## II.

I also part ways with the majority regarding whether Olmos Borja has a well-founded fear of persecution on account of membership in the social group of her family if she were to return to El Salvador. Although the BIA accepted that Olmos Borja's fear was genuine, it determined that the fear was not objectively well-founded because neither of her parents experienced harm rising to the level of persecution after her departure, and she failed to distinguish her situation from theirs. Here, again, the evidence does not compel a contrary conclusion.

Since Olmos Borja left El Salvador, her mother has remained in the country unharmed. Although her father died approximately 15 months after Olmos Borja left the country, he too did not experience persecution during that time. Under our precedent, their continued safety is itself substantial evidence that Olmos Borja does not face a well-founded fear of persecution on account of her membership in the social group of her family.[1] *See Santos-Lemus v. Mukasey*, 542 F.3d 738,

---

[1]    The majority's reliance on cases dealing with claims for asylum based on grounds other than family association incorrectly downplays the significance of Olmos Borja's family's safety in this case, where her claim for asylum is based on membership in the social group of her family.

743–44 (9th Cir. 2008) ("[W]here Santos-Lemus's claim of persecution is based on his membership in the 'particular social group' of his 'family,' the fact that a family member has remained unharmed since he left El Salvador is 'substantial evidence' supporting the Board's finding that Santos-Lemus lacks a well-founded fear of future persecution based on family membership.").

The majority discounts the relevance of Olmos Borja's mother's continued safety by concluding that Olmos Borja is not similarly situated to her mother. I do not find any evidence in the record that compels the majority's conclusion. Olmos Borja attempts to distinguish her situation from that of her mother by asserting that her mother now lives in a different town and has remained safe because she rarely leaves the house. In fact, Olmos Borja lived for a time with her mother and continued to receive threats and harassment from gang members. Thus, I cannot say that location is such a compelling distinction between the two that it permits us to reverse the BIA.

The other ways in which Olmos Borja's situation may be different from that of her mother are, I believe, irrelevant to Olmos Borja's claim for asylum based on her family membership. For example, Olmos Borja argues – and the majority appears to accept – that her situation is distinguishable from that of her mother because her mother never actively opposed the gang or participated in the

5

investigation into Lisseth's murder. While these distinctions may be relevant if Olmos Borja were claiming asylum on a different protected ground, they are not relevant to her claim based on family membership. In other words, substantial evidence supports the BIA's conclusion that Olmos Borja and her mother are similarly situated to the extent that Olmos Borja seeks asylum as a member of the social group of her family.

We have previously rejected an argument very similar to the one adopted by the majority today. In *Santos-Lemus*, the petitioner, a young male, argued that his mother's continued safety did not negate his claim of a well-founded fear of persecution on account of his family association because she was a female, while the gang targeted young males like him. *See* 542 F.3d at 744. There, we held the argument to be irrelevant to whether the petitioner was targeted on account of his family membership, although it may have been relevant to a claim for asylum based on other grounds. *Id.* I see no persuasive distinction between *Santos-Lemus* and the present case on this issue. As in *Santos-Lemus*, Olmos Borja's argument that her mother was not similarly situated because she did not participate in the investigation or oppose the gang is simply irrelevant to the question of whether Olmos Borja was targeted on account of her family association; in fact, like in *Santos-Lemus*, it suggests that she was targeted primarily for other reasons.

6

Further, I find it perplexing why the majority discounts her father's safety merely because he only lived in El Salvador for 15 months after Olmos Borja left. I see no reason why the evidence from the 15 months he continued to live in El Salvador before his death could not have been considered by the BIA in assessing Olmos Borja's fear of persecution. There is no evidence to suggest that Olmos Borja and her father were not similarly situated. Thus, her father's safety after Olmos Borja left El Salvador also provides substantial evidence to support the BIA's conclusion.[2] *See id.* at 743–44.

### III.

Although I do not believe the evidence compels the conclusion that Olmos Borja is eligible for asylum based on her membership in the social group of her family, she may be eligible for asylum on a different ground – her membership in the social group of individuals who gang members believe to be potential

---

[2] The majority has constructed a peculiar "particular social group," consisting of three members, only one of whom has faced persecution. The majority defines the particular social group of which Olmos Borja is a member as "a family who actively opposes the gang because its members killed Olmos Borja's sister." Maj. Dispo. at 4. But this construct is at odds with the majority's conclusion that "Olmos Borja's mother was not similarly situated to Olmos Borja, and her father died of natural causes in 2008." Maj. Dispo. at 3. What the majority's statements amount to is the contradictory assertion that Olmos Borja is not similarly situated to the only other members of the defined group, which consists only of herself and her parents.

witnesses against them or individuals who participate in official investigations against gang members. The BIA's decision suggests that it may have concluded that Olmos Borja was persecuted because gang members believed her to be a witness to her sister's murder or because she cooperated in the investigation of the shooting. The BIA, however, did not consider whether Olmos Borja was eligible for asylum on this ground.

When the BIA decided this case, it did not have the benefit of *Henriquez-Rivas v. Holder*, 707 F.3d 1081 (9th Cir. 2013) (en banc), in which we held that "witnesses who testify against gang members" may be a cognizable social group. *Id.* at 1083. We have since also recognized that government informants and collaborators may be cognizable social groups. *See Lopez-Simon v. Holder*, 2013 WL 3929586, at *1 (9th Cir. July 31, 2013) (government informants) (unpublished memorandum); *Pinhas v. Holder*, 2013 WL 3043149, at *1–*2 (9th Cir. June 19, 2013) (U.S. Drug Enforcement Agency collaborators) (unpublished memorandum).

*Henriquez-Rivas* suggests that "the perception of the persecutors may matter the most" in determining whether a social group is cognizable under the statute. *Henriquez-Rivas*, 707 F.3d at 1089. Indeed, the "petitioner is persecuted precisely because the persecutor recognizes the object of his persecution." *Id.* Thus, if gang

8

members perceived Olmos Borja to be a potential witness and targeted her for that reason, she may belong to a cognizable social group comprised of perceived or potential witnesses. In that case, "as far as [her] persecutor is concerned," *id.* at 1090, Olmos Borja may be part of a discrete class of persons who are potential witnesses against gang members. Similarly, if gang members targeted Olmos Borja because she participated in the investigation against them, she may be eligible for asylum as a member of a group similar to government informants or DEA collaborators. *See Lopez-Simon*, 2013 WL 3929586, at *1; *Pinhas* , 2013 WL 3043149, at *1–*2.

Because the BIA has not yet considered whether Olmos Borja is eligible for asylum based on her membership in the social group of individuals perceived to be potential witnesses against gang members or individuals who participate in investigations into gang members' alleged crimes, I would remand for the BIA's consideration of this question in light of *Henriquez-Rivas*.

## IV.

In sum, although the evidence *may support* the conclusion that Olmos Borja was persecuted on account of her membership in the social group of her family or faces a well-founded fear of persecution on this ground, I cannot agree with the majority that the evidence *compels* such a conclusion. I would, however, remand

9

to the BIA for its consideration, in light of *Henriquez-Rivas*, of whether Olmos

Borja is entitled to relief as a member of a different protected group.