UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

MINGZHU LI,

Petitioner,

v.

LORETTA E. LYNCH, Attorney General,

Respondent.

No. 14-71556

Agency No. A098-468-123

ORDER

APR 08 2016

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

Before: MURPHY,[*] PAEZ, and NGUYEN, Circuit Judges.

The motion to amend is GRANTED. The prior memorandum disposition filed on March 30, 2016 is hereby amended. The amended memorandum disposition filed concurrently with this order.

---

[*] The Honorable Michael R. Murphy, Senior Circuit Judge for the U.S. Court of Appeals for the Tenth Circuit, sitting by designation.


**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| MINGZHU LI, | No. 14-71556 |
| Petitioner, | Agency No. A098-468-123 |
| v. | AMENDED |
| LORETTA E. LYNCH, Attorney General, | MEMORANDUM* |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted March 8, 2016**
Pasadena, California

Before: MURPHY,*** PAEZ, and NGUYEN, Circuit Judges.

Mingzhu Li appeals the decision by the Board of Immigration Appeals

(BIA) denying her applications for asylum and withholding of removal.

---

\* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

\** The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

\*** The Honorable Michael R. Murphy, Senior Circuit Judge for the U.S. Court of Appeals for the Tenth Circuit, sitting by designation.

We affirm that substantial evidence supports the BIA's determination that Li did not suffer past persecution. *Gu v. Gonzales*, 454 F.3d 1014, 1019-22 (9th Cir. 2006). However, the BIA incorrectly determined that Li failed to show a nexus between her claims of future persecution and a protected ground. The record compels the conclusion that Li's political opinion is "one central reason" that she fears persecution upon returning to China. 8 U.S.C. § 1158(b)(1)(B)(i).

Li, a Chinese citizen, supervised about 100 workers at a state-owned paper mill. When her numerous complaints to management about unexplained reductions in workers' salaries were ignored, Li helped to organize and attended a peaceful demonstration seeking a government solution to the corruption. After police raided the rally, Li was detained and interrogated. Li expressed her political opinion that the government should address the workers' demands to authorities both at the protest and during questioning. At a second rally that Li organized to protest the government's lengthy detention of two of her coworkers, police officers violently targeted and physically restrained Li. Li escaped, and that same evening the police came looking for her at her home. Since that time, police continued to check for Li at her home every three to five months, and two of her co-organizers were sentenced to prison.

The BIA erred in concluding that Li's participation in a demonstration motivated by the nonpayment of wages, coupled with her pro-labor, anti-corruption statements made to government officials, did not create a nexus to her political opinion. We have found labor speech to be political even when motivated by economic interests. *Hu v. Holder*, 652 F.3d 1011, 1018 (9th Cir. 2011). Officials' accusations that Li was a "conspirator" and a "plotter behind the curtain" indicate that her arrest was motivated by an imputed anti-government or pro-labor political opinion, either of which satisfies the nexus requirement. *See id*. at 1017. The fact that she denied these accusations is immaterial. *Id*. Further, by leading the second demonstration protesting the detention of her fellow workers, Li expressed an anti-government political opinion. *Id*. at 1017-18. Finally, because officials had no legitimate prosecutorial purpose for detaining and physically abusing Li, the record compels the conclusion that she was targeted on account of her actual or imputed political opinion.[1] *Li v. Holder*, 559 F.3d 1096, 1113 (9th Cir. 2009).

---

[1] The dissent argues that Li's detention, as well as the two-year prison sentences that her co-workers received, could have been predicated upon the offense of disturbing the peace. Based on the peaceful nature of the protests, substantial evidence does not support this conclusion.

3

The record also compels the conclusion that Li has a well-founded fear of future persecution on the basis of a protected ground. Li has already been detained once, and two of her colleagues were sentenced to prison. The police's continued visits to her husband's home–which spanned at least seven years–indicate that the government maintains a strong interest in her whereabouts. *See Hoxha v. Ashcroft*, 319 F.3d 1179, 1184 (9th Cir. 2003) (holding that the government's continued efforts to detain the applicant demonstrated a particularized risk of future persecution). Li's numerous complaints to executives at a government-run company, her organizational role in the protests, and the fact that officials came to her home for the first time soon after the second protest show that there is a "reasonable possibility" Li will be persecuted if she returns to China. 8 C.F.R. § 1208.13(b)(2)(i).

Because Li has established a well-founded fear of future persecution on account of a protected ground, we need not reach her withholding of removal claim.

Each side shall bear its own costs.

**PETITION FOR REVIEW DENIED in part; GRANTED in part; REMANDED for further proceedings.**

4

*Mingzhu Li v. Lynch,* No. 14-71556

MURPHY, Circuit Judge, concurring in part and dissenting in part.

I agree that substantial evidence supports the BIA's conclusion Li failed to demonstrate past persecution. I disagree, however, with the majority's assertion that the record compels the conclusion there is a nexus between Li's political opinion and any potential persecution she might suffer upon return to China.

To establish a well-founded fear of future persecution, Li must show her "fear of persecution is subjectively genuine and objectively reasonable." *Bringas-Rodriguez v. Lynch*, 805 F.3d 1171, 1182 (9th Cir. 2015) (quotation omitted). While Li's subjective fear of future persecution based on political opinion may be genuine, the record does not compel the conclusion that her fear is objectively reasonable.

The record does not conclusively establish that the purpose of the first rally was political, rather than economic, in nature. *Hu v. Holder*, 652 F.3d 1011, 1018 (9th Cir. 2011) (noting there is "no easy test" to make that determination). Instead, it can be read to support the BIA's determination that the protestors, specifically including Li, were seeking the assistance of the local government to correct mismanagement at the mill and that Li's actions, in this particular case, were economic rather than political. Nor

does the record support the majority's conclusion that Li expressed her political opinions during questioning by authorities. During that interrogation, Li denied being an organizer of the protest and stated she merely wanted authorities to pay attention to the difficulties of the employees.[1] Unlike the other organizers, Li was quickly released from custody. For these reasons, the majority's reliance on *Zhiqiang Hu v. Holder*, a case involving interrogators imputing a specific anti-government opinion to the petitioner, is misplaced. 652 F.3d 1011, 1017-18 (9th Cir. 2011); *see also INS v. Elias-Zacarias*, 502 U.S. 478, 483-84 (1992) (holding that on appeal a petitioner must come forward with such compelling evidence of her persecutors' motives that no reasonable factfinder would rule against her).

The record does not compel the conclusion Chinese authorities "violently targeted" Li at the second protest. Instead, the record fully supports the BIA's determination that the authorities did not know Li was an organizer of the second protest at any point prior to the confrontation between the police and the protestors. The record likewise supports the

---

[1] The majority asserts authorities "accused" Li of being a "conspirator" and "plotter behind the curtain." The BIA reasonably interpreted the interrogation as questioning whether Li was an organizer, rather than accusing her of being one.

BIA's determination that the baton blow and kick suffered by Li were the result of the chaotic situation, rather than a targeted attack.[2]

That leaves the following facts: authorities came to Li's home to look for her the night of the second protest, have continued to go to her house to check for her presence, and two other protest organizers have been imprisoned. The record does not, however, indicate upon what basis Li's co-organizers were imprisoned. It is entirely possible they were cautioned after the first protest, as was Li, to avoid activities that might lead to public unrest (i.e., large street rallies) and were imprisoned when they failed to comply with these directives. *See Elias-Zacarias*, 502 U.S. at 483-84.

Although the record in this case would allow a factfinder to conclude there was a nexus between any persecution Li might suffer upon her return

---

[2]In support of the assertion Chinese authorities violently targeted Li, the majority relies on a narrow portion of the record. The only pertinent portion is the following statement from Li: "The police, after getting out of their vehicles, started to, you know, catch and we, several leaders, and they whipped their police batons onto our employers." This ambiguous statement is not sufficient to mandate a finding that authorities "targeted" Li at the second protest. This is especially true when one considers the broader record. That is, the record supports the BIA's conclusion authorities did not know Li was an organizer at any point prior to the second protest; demonstrates Li just happened to be walking toward the front of the group of protestors; and supports the BIA's finding that the blows resulted from chaotic police/protestor interactions, rather than from targeted violence. Thus, the record does not compel the conclusion Li was "targeted" for her political opinion at the second protest.

3

to China and a political opinion imputed to her by Chinese authorities, the record does not compel such a conclusion. As a consequence, there exists substantial evidence to support the BIA's no-nexus finding. *Id.* For that reason, I respectfully dissent.