**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

JUL 29 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

WENYING SUN,

Petitioner,

v.

WILLIAM P. BARR, Attorney General,

Respondent.

No.  17-73038

Agency No. A089-779-636

MEMORANDUM[*]

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted June 1, 2020
Pasadena, California

Before:  FERNANDEZ and LEE, Circuit Judges, and ORRICK,[**] District Judge.

Wenying Sun, a native and citizen of China, timely petitions for review of a

Board of Immigration Appeals ("BIA") decision dismissing her appeal from an

immigration judge's ("IJ") denial of her application for asylum,[1] withholding of

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]     The Honorable William Horsley Orrick, United States District Judge for the Northern District of California, sitting by designation.

[1] 8 U.S.C. § 1158(a)(1).

removal,[2] and protection under the Convention Against Torture ("CAT").[3] We have jurisdiction under 8 U.S.C. § 1252. We grant the petition in part and remand to the BIA.

Sun credibly testified to the following events at a hearing before the IJ. After 28 years of work at a government-owned factory in China, she and other workers were laid off with what they considered insufficient severance. When factory leadership rebuffed their attempts to discuss the terms of the layoffs, Sun and two other leaders organized a protest in front of the local municipal building, attended by 800 workers. After the guards refused their request to meet with government leaders, police arrived and arrested Sun and the other organizers. During the interrogation that followed, three officers accused Sun of "disrupting social order by, by organiz[ing] a riot to . . . launch [an] attack against the governmental agencies." They punched, kicked, and electrically shocked her, then dragged her back to a cell where she was held for ten days.

The IJ denied Sun's application and the BIA affirmed, finding that she failed

---

[2] 8 U.S.C. § 1231(b)(3)(A).

[3] United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, adopted Dec. 10, 1984, S. Treaty Doc. No. 100-20 (1988), 1465 U.N.T.S. 85, implemented at 8 C.F.R. § 1208.18.

to establish a nexus between a protected activity and the harm she suffered.[4] After Sun's first petition for review, this court remanded to the BIA to consider the effect of *Hu v. Holder*, 652 F.3d 1011 (9th Cir. 2011). The BIA then reaffirmed its earlier decision, finding that by contrast with the petitioner in *Hu*, Sun was arrested after "yelling in front of 800 other co-workers during an illegal demonstration" and was "accused of disrupting the social order, not for the content of the protest."

Sun's credible testimony compels the finding that the police officers who arrested and interrogated her were motivated by an imputed anti-government political opinion. *See Hu*, 652 F.3d at 1017–18; *Baghdasaryan v. Holder*, 592 F.3d 1018, 1023 (9th Cir. 2010). Although Sun was accused of disturbing the order of society, the accusations against her went further. *See Hu*, 652 F.3d at 1019. The officers told her why they targeted her: for organizing a riot to launch an attack on the governmental agencies. *See id.* at 1017 (noting that officers accused the petitioner of acting against the government and the Communist party). In addition, the officers' conduct thereafter further compels the conclusion that the imputed political opinion was at least one central reason for Sun's mistreatment: the officers made these statements immediately prior to punching, kicking, and

---

[4] The BIA did not address the IJ's alternative finding that the mistreatment Sun suffered did not rise to the level of persecution. We leave that issue for the BIA's consideration upon remand.

17-73038

electrically shocking her. *See* 8 U.S.C. § 1158(b)(1)(B)(i); *Parussimova v. Mukasey*, 555 F.3d 734, 741 (9th Cir. 2009).

The Agency's contrary conclusion is not supported by substantial evidence. While Sun was not protesting government corruption and the record does not reflect prior political involvement, the focus belongs not on *her* beliefs or prior actions but rather on what her persecutors "falsely attribute[d]" to her. *Baghdasaryan*, 592 F.3d at 1023 n.6 (internal quotation marks omitted); *see also Singh v. Barr*, 935 F.3d 822, 825 (9th Cir. 2019) ("[T]he crucial element of an asylum claim is the persecutor's motive."). When police officers observed Sun leading a protest of 800 workers in front of the municipal building, the record is clear that they understood her actions to be an attack on the government.

Sun further asserts that her organizing expressed a protected pro-labor political opinion. "Although there is no easy test to determine when a worker's or employer's action is political—as opposed to or in addition to economic—our case law makes clear that labor agitation advancing economic interests can nevertheless express a political opinion." *Hu*, 652 F.3d at 1018. There is evidence in the record to support the finding that Sun's organizing expressed a political opinion:  her employer was the government and the 2012 Country Report reflects severe limitations on Chinese citizens' rights to assemble and express dissenting views. But in the absence of evidence of government corruption and prior political

4                                                                                                     17-73038

involvement by Sun, this conclusion is not compelled.

Finally, substantial evidence supports the Agency's denial of Sun's CAT claim. Her petition presents no specific evidence to compel the finding that it is more likely than not that she will be tortured if returned to China.

**PETITION GRANTED IN PART, DENIED IN PART, AND REMANDED.**