**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

TATYANA MICHAILOVNA
PARUSSIMOVA,

*Petitioner,*

v.

MICHAEL B. MUKASEY, Attorney
General,

*Respondent.*

No. 06-75217

Agency No.
A98-822-251

ORDER
AMENDING
OPINION AND
AMENDED
OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
May 14, 2008—San Francisco, California

Filed July 24, 2008
Amended January 26, 2009

Before: Diarmuid F. O'Scannlain and
Michael Daly Hawkins, Circuit Judges, and
James V. Selna,* District Judge.

Opinion by Judge O'Scannlain

---

*The Honorable James V. Selna, United States District Judge for the
Central District of California, sitting by designation.

## COUNSEL

Saad Ahmad, Esq., Saad Ahmad & Associates, Fremont, California, argued the cause for the petitioner and filed a brief; Robert L. Volz, Esq., Saad Ahmad & Associates, Fremont, California, was on the brief.

Sarah Maloney, Attorney, Office of Immigration Litigation, U.S. Department of Justice, Washington, DC, argued the cause for the respondent and filed a brief; James E. Grimes, Senior Litigation Counsel, and Peter D. Keisler, Assistant Attorney General, Civil Division, U.S. Department of Justice, Washington, DC, were on the brief.

**ORDER**

The opinion filed in this case on July 24, 2008, is amended as follows:

At page 9245 of the slip opinion, line 11, after the sentence concluding "did not exist," insert <Likewise, a motive is a "central reason" if that motive, standing alone, would have led the persecutor to harm the applicant.>

Judges O'Scannlain and Hawkins have voted to deny the petition for rehearing en banc and Judge Selna so recommends. The full court has been advised of the petition for rehearing en banc and no active judge has requested a vote on whether to rehear the matter en banc. Fed. R. App. P. 35.

The petition for rehearing en banc is DENIED. No further petitions for rehearing or rehearing en banc may be filed.

---

**OPINION**

O'SCANNLAIN, Circuit Judge:

We are called upon to interpret a provision of the Real ID Act of 2005 imposing a new evidentiary burden on asylum applicants and to determine whether the Board of Immigration Appeals, in applying such provision, properly denied asylum to an alien who claimed she was the victim of religious and ethnic persecution in Kazakhstan.

I

A

Tatyana Parussimova is a 28-year-old native and citizen of Kazakhstan. She is an ethnic Russian and an adherent of the

Orthodox Christian faith.[1] Parussimova was admitted to the United States on a nonimmigrant B-1 visa in May 2005 for the purpose of attending a conference organized by her employer, Herbalife International of America, Inc., in Atlanta, Georgia. She overstayed her visa and, on the day after it expired, filed an application for asylum claiming that she had been persecuted in Kazakhstan on account of her ethnicity and religion, and that she feared persecution on account of the same grounds upon her return.

On September 28, 2005, an asylum hearing was held before an Immigration Judge ("IJ"), at which Parussimova conceded removability under 8 U.S.C. § 1227(a)(1)(B), and testified in support of her application for asylum. Parussimova described her life in Kazakhstan as a harsh one. She witnessed riots against the Soviet government in 1986, which she said left her permanently affected. As a student, her schoolteachers discriminated against her and other Russian students. She narrowly escaped an attempted sexual assault by an unknown stranger in 1999, and her cousin was beaten and killed by a group of Kazakhs in March 2005.

The most significant event Parussimova described occurred on January 10, 2005. According to Parussimova, she was walking on a street near her home, wearing an Herbalife pin on her chest, when she was confronted by two Kazakh men who began "bugging" and "insulting" her. Suddenly, the men dragged Parussimova into the entryway of an apartment building, where they told her that she "did not have the right to work for an American company," and pulled the Herbalife pin off her chest. Parussimova briefly passed out, and when she regained consciousness, the men were kicking her, spitting at

---

[1]According to the 2005 State Department reports in the record, ethnic Russians comprise approximately 28% of Kazakhstan's population; Kazakhs, which comprise approximately 56%, are the majority group. The same reports indicate that 44% of Kazakhstan's population is Orthodox Christian, while 47% is Muslim.

her, and told her that "we were Russian pigs and we . . . had to get out of their country." The men warned Parussimova not to report the attack, and then tore off her clothes and tried to rape her.

Parussimova screamed, which alerted residents of the apartment building and caused her assailants to flee. A passerby came to Parussimova's aid and called the police, who arrived, questioned Parussimova, and took her to the hospital.

One week later, Parussimova recognized her assailants on the street while she was walking with her father. Parussimova's father called the police, who detained the men and had them "taken away." Parussimova's assailants were apparently released, however, as she testified that she saw them again a few days afterwards, while she was walking with her cousin. This time the men threatened to kill her because she had reported them to the police. Parussimova escaped, but the men beat her cousin, leaving him unconscious. According to Parussimova, the police "didn't do anything" about this incident. The men threatened Parussimova on several subsequent occasions, but each time they would always "just disappear."

As a result of the attacks and subsequent threats, Parussimova told the IJ that she would be "scared for her life" if she is returned to Kazakhstan, particularly because her assailants remain at large and because she believes she has "no protection from the government."

B

At the conclusion of the hearing, the IJ denied Parussimova's asylum application.[2] At the outset, the IJ discussed

---

[2]Parussimova also applied for withholding of removal and protection under the Convention Against Torture. The IJ denied both forms of relief and the Board of Immigration Appeals ("BIA" or the "Board") affirmed. Parussimova has not petitioned for review of those determinations and, accordingly, we deem any claims relating to them waived. *See Martinez-Serrano v. INS*, 94 F.3d 1256, 1259-60 (9th Cir. 1996).

several inconsistencies between Parussimova's testimony and other evidence in the record as well as several notable omissions from the affidavit she filed in support of her application. Nevertheless, the IJ declined to deny the application on account of Parussimova's credibility, instead holding that she could not establish that she was a refugee under the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.*, because she could not demonstrate that her assailants attacked her "on account of" her religion or ethnicity as opposed to some other ground. *See id.* § 1101(a)(42)(A). The BIA affirmed in a separate opinion, resting its decision on the same conclusion.[3]

Parussimova timely filed this petition for review.

## II

We begin with the well-established principle that our review of BIA decisions is highly deferential; we may reverse only if the evidence in the record compels a contrary result. *See INS v. Elias-Zacarias*, 502 U.S. 478, 481 & n.1 (1992); *Singh v. Ashcroft*, 367 F.3d 1139, 1143 (9th Cir. 2004).

**[1]** The Secretary of Homeland Security or the Attorney General has the discretion to confer asylum on any person who qualifies as a "refugee." 8 U.S.C. § 1158(b)(1)(A). The INA defines a "refugee" as an alien who is "unable or unwilling to return to [his or her home country], and is unable or unwilling to avail himself or herself of the protection of[ ] that

---

[3]Although the IJ suggested more than one ground for its decision, the BIA affirmed the IJ only insofar as the IJ held that Parussimova failed to establish that her assailants attacked and threatened her "on account of" her religion and ethnicity, citing *Matter of Burbano*, 20 I. & N. Dec. 872, 874 (1994). When the BIA cites *Burbano* and expressly indicates that its affirmance "appl[ies] to only one ground upon which the IJ's decision rested," we consider the BIA's decision as based exclusively on such ground. *Abebe v. Gonzales*, 432 F.3d 1037, 1040-41 & n.4 (9th Cir. 2005) (en banc).

country because of persecution or a well-founded fear of persecution *on account of* race, religion, nationality, membership in a particular social group, or political opinion." *Id.* § 1101(a)(42)(A) (emphasis added). We refer to these five categories as the "protected grounds."

**[2]** The term "persecution" is not explicitly defined in the INA, but we have held that an alien who seeks to demonstrate that she was persecuted in the past must prove (1) that she was the victim of "an incident, or incidents, that rise to the level of persecution"; (2) that the persecution was "on account of" one of the protected grounds; and (3) that such persecution was "committed by the government or forces the government is either unable or unwilling to control." *Navas v. INS*, 217 F.3d 646, 655-56 (9th Cir. 2000) (internal quotation marks omitted). Only the second element of that definition is at issue here, as the BIA rejected Parussimova's asylum application for the sole reason that she failed to establish that she was persecuted "on account of" a protected ground. Thus, if substantial evidence does not support the BIA's determination, we must remand to allow the BIA to consider, in the first instance, whether the other two elements of persecution are present in Parussimova's case. *See INS v. Ventura*, 537 U.S. 12, 16-18 (2002).

## A

**[3]** As the Supreme Court held in *Elias-Zacarias*, the term "on account of" in § 1101(a)(42)(A) requires an asylum applicant to prove that she was persecuted "*because of*" a protected ground. 502 U.S. at 483 (emphasis in original). This necessitates an assessment of the persecutors' motives. Indeed, the INA "makes motive critical" and, while it does not require the applicant to provide "direct proof of his persecutors' motives," it does demand "*some* evidence of [motive], direct or circumstantial." *Id.* (emphasis in original).

**[4]** In some cases, such as this one, the record suggests that persecutors may have had several motives for mistreating an

asylum applicant. We have considered such mixed-motive cases before, most notably in the companion en banc decisions, *Briones v. INS*, 175 F.3d 727 (9th Cir. 1999) (en banc), and *Borja v. INS*, 175 F.3d 732 (9th Cir. 1999) (en banc). In *Borja*, we held that the term "on account of" in § 1101(a)(42)(A) does not burden the applicant with proving that she was persecuted "*solely* on account of" a protected ground, but only requires that she "produce evidence from which it is reasonable to believe that the harm was motivated, *at least in part*, by an actual or implied protected ground." *Id.* at 735-36 (first emphasis in original) (internal quotation marks omitted); *see also Singh v. Ilchert*, 63 F.3d 1501, 1509 (9th Cir. 1995) ("[P]ersecutory conduct may have more than one motive, and so long as one motive is one of the statutorily enumerated grounds, the requirements have been satisfied.").

[5] Our development of the "at least in part" rule was consistent with our previous holdings in political persecution cases that imposed a presumption that a government's harassment of an asylum applicant was politically motivated absent evidence of "a legitimate prosecutorial purpose" for such conduct. *Singh*, 63 F.3d at 1509 (internal quotation marks omitted); *see also Blanco-Lopez v. INS*, 858 F.2d 531, 534 (9th Cir. 1988) (same); *Hernandez-Ortiz v. INS*, 777 F.2d 509, 516 (9th Cir. 1985) (same). Our subsequent caselaw followed suit, applying the "at least in part" rule to allow an asylum applicant to establish persecution on account of a protected ground as long as such ground was at least one reason for her persecutors' conduct, even if other reasons appeared to have been the dominant cause of the persecutory action. *See, e.g., Ndom v. Ashcroft*, 384 F.3d 743, 755 (9th Cir. 2004) (concluding that, in the absence of evidence of a "legitimate criminal prosecution," a member of a group seeking forcibly to overthrow the government in his home country could establish that he was persecuted by the government on account of his political opinion "even if the persecution served intelligence gathering purposes"); *Gafoor v. INS*, 231 F.3d 645, 651-52 (9th Cir. 2000) (concluding that although petitioner's persecutors were

"activated" by their desire to retaliate against the petitioner, a non-protected ground, the political accusation and ethnic slur they uttered in the course of detaining and beating petitioner demonstrated that he was persecuted "at least in part" on account of a protected ground).

**[6]** This body of mixed-motive jurisprudence has now been superseded by statute. In 2005, Congress enacted the Real ID Act, Pub. L. No. 109-13, div. B, 119 Stat. 231, altering several aspects of the asylum system, including the evidentiary burden placed on asylum applicants seeking to demonstrate that they have been or will be victims of persecution. Replacing the "at least in part" rule we previously applied, section 101(a)(3)(B)(i) of the Act states that "[t]o establish that the applicant is a refugee . . . , the applicant must establish that race, religion, nationality, membership in a particular social group, or political opinion was or will be *at least one central reason* for persecuting the applicant." 8 U.S.C. § 1158(b)(1)(B)(i) (emphasis added). This is the first occasion on which we have been called upon to interpret this new statute. Thus, we examine the difference, if any, between *Borja*'s rule and the new "one central reason" standard.

B

Statutory interpretation begins with the text of the enactment. *Duncan v. Walker*, 533 U.S. 167, 172 (2001). The Real ID Act requires that a protected ground represent "one central reason" for an asylum applicant's persecution, but the phrase "one central reason" is not explicitly defined. "When a word is not defined by statute, we normally construe it in accord with its ordinary or natural meaning." *Smith v. United States*, 508 U.S. 223, 228 (1993). Dictionaries define the term "central" as being "of primary importance"; the terms "essential" and "principal" are synonyms. *Merriam Webster's Collegiate Dictionary* 201 (11th ed. 2003); *see also Webster's Third New International Dictionary* 363 (1986) (defining "central" as "belonging to the center as most important part," "basic,

essential, principal, dominant," "not peripheral or incidental"); *American Heritage Dictionary* 302 (4th ed. 2000) (defining "central" as "[o]f basic importance; essential or principal").

**[7]** Thus, the text of this provision leads us to two initial conclusions. First, an asylum applicant need not prove that a protected ground was the only central reason for the persecution she suffered. The Act requires that a protected ground serve as "*one* central reason" for the persecution, naturally suggesting that a persecutory act may have multiple causes. Second, an applicant need not prove that a protected ground was the most important reason why the persecution occurred. The Act states that a protected ground must constitute "at least one" of the central reasons for persecutory conduct; it does not require that such reason account for 51% of the persecutors' motivation.

**[8]** Nevertheless, the plain meaning of the phrase "one central reason" indicates that the Real ID Act places a more onerous burden on the asylum applicant than the "at least in part" standard we previously applied. A central reason—one that is "primary," "essential," or "principal"—represents more than a mere "part" of a persecutor's motivation. We find confirmation for this view in the fact that Congress inserted the "one central reason" standard into 8 U.S.C. § 1158(b), which describes the "Conditions for granting asylum," by creating a new subsection entitled "Burden of Proof." *Id.* § 1158(b)(1)(B). As the pre-Real ID Act version of § 1158 contained no such provision, its insertion suggests Congress's intent to elevate the applicant's burden rather than to maintain or to reduce it. The Act's structure further supports this view, as it contains several provisions besides the one at issue here that enhance the evidentiary requirements for obtaining asylum. *See, e.g.,* Real ID Act of 2005, Pub. L. No. 109-13, div. B., § 101(a)(3)(B)(ii), 119 Stat. 231, 303 (codified at 8 U.S.C. § 1158(b)(1)(B)(ii)) (permitting immigration judges to require evidence to corroborate an applicant's "otherwise credible

testimony"); *id.* § 101(a)(3)(B)(iii), 119 Stat. at 303 (codified at 8 U.S.C. § 1158(b)(1)(B)(iii)) (authorizing immigration judges to reach adverse credibility determinations "without regard to whether an inconsistency, inaccuracy, or falsehood [in the applicant's testimony] goes to the heart of the applicant's claim.").

[9] Indeed, the BIA's own analysis of this provision points in the same direction. As the Board explains, under the "one central reason" standard, "the protected ground cannot play a minor role in the alien's past mistreatment or fears of future mistreatment. That is, it cannot be incidental, tangential, superficial, or subordinate to another reason for harm." *In re J-B-N & S-M*, 24 I. & N. Dec. 208, 214 (2007).

[10] We are persuaded by such interpretation. In *Borja*, we insisted that a protected ground play a role in the persecutors' actions, *see* 175 F.3d at 736, but we never suggested that the applicant was required to show that such ground was a necessary cause of the persecutory conduct. Thus, as our subsequent decisions confirmed, causation was not a required element of the "at least in part" standard. *See, e.g., Gafoor*, 231 F.3d at 653 ("*Borja* makes clear that an applicant need not show that a protected ground, standing alone, would have led to the persecution."). We believe the difference between the "one central reason" standard and our prior "at least in part" rule lies here. A "central" reason is a reason of primary importance to the persecutors, one that is essential to their decision to act. *See supra* at 883-84. In other words, a motive is a "central reason" if the persecutor would not have harmed the applicant if such motive did not exist. Likewise, a motive is a "central reason" if that motive, standing alone, would have led the persecutor to harm the applicant. As noted above, persecution may be caused by more than one central reason, and an asylum applicant need not prove which reason was dominant. Nevertheless, to demonstrate that a protected ground was "at least one central reason" for persecution, an

applicant must prove that such ground was a cause of the persecutors' acts.

## C

[11] We next consider whether Parussimova has satisfied the "one central reason" standard in the case at hand. Here, the record reveals that Parussimova's assailants had at least three possible reasons for attacking her on the street: (1) her ethnicity, (2) her association with an American company, made evident by her wearing an Herbalife pin on her chest, and (3) her vulnerability, as a young woman walking alone, to a sexual assault. These same reasons and a fourth, her decision to report the first incident to the police, served as possible causes of their subsequent threats. Only the first reason is a protected ground.[4]

[12] According to Parussimova, her assailants called her a "Russian pig" and told her to get out of their country in the course of their January 10, 2005 attack. This is the only evidence that such trait played any role in that incident or the subsequent threats. Such statements indicate that the men were aware of Parussimova's ethnicity and used it as a means to degrade her. Yet the record reveals no causal connection between this characteristic and the men's attack or the threats that followed afterwards.

[13] It is important to emphasize that persecutors are hardly "likely to submit declarations explaining exactly what motivated them to act," *Gafoor*, 231 F.3d at 654, and we do not believe the Real ID Act demands such an unequivocal show-

---

[4]Although Parussimova makes a general assertion that she was persecuted in Kazakhstan on account of her ethnicity and her religion, she makes no specific allegations that her faith played any role in the January 10, 2005 incident or the subsequent threats, and the record contains no such evidence. Thus, we consider Parussimova's ethnicity as the only potential protected ground upon which she may establish her eligibility for asylum.

ing. In this case, however, it is simply not clear whether Parussimova's ethnicity, as opposed to one of the other possible motives evinced by the record, caused the assailants to initiate their attack or increase its severity once it had begun. Indeed, the assailants accosted Parussimova and dragged her off the street without any mention of her ethnicity. And their first statement to her once they had cornered her in the apartment building entryway was an explicit, hostile reference to the Herbalife pin she was wearing and their belief that she had "no right" to work for an American company. Finally, their last act was to try to rape her.

[14] The assailants' reference to Parussimova's ethnicity in the course of their attack may suggest that such trait played a role in this incident. Nevertheless, we cannot conclude that the utterance of an ethnic slur, standing alone, compels the conclusion that her ethnicity was a central motivating reason for the attack.

## III

[15] Accordingly, the BIA's determination that Parussimova was not attacked on account of a protected ground is supported by substantial evidence, and Parussimova's petition for review is

**DENIED.**