**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

AUG 08 2017

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS



FNU CHARLIE,

Petitioner,

v.

JEFFERSON B. SESSIONS III, Attorney
General,

Respondent.

No.   14-72462

Agency No. A099-963-300

MEMORANDUM*

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted July 10, 2017
Pasadena, California

Before: PREGERSON, REINHARDT, and WARDLAW, Circuit Judges.

Charlie, a native and citizen of Indonesia who is of Chinese ethnicity,

petitions for review of the Board of Immigration Appeals' ("BIA") decision

denying his applications for asylum, withholding of removal, and protection under

---

*      This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

the Convention Against Torture ("CAT"). We have jurisdiction pursuant to 8 U.S.C. § 1252, and we grant Charlie's petition for review.

1. The BIA erred in determining that the past harm Charlie suffered did not rise to the level of persecution. It is "well established" that physical violence, including beatings, constitutes persecution. *See Li v. Holder*, 559 F.3d 1096, 1107 (9th Cir. 2009). On three occasions between 1992 and 2005, Charlie suffered physical beatings, one of which he characterized as "barbaric," two of which required medical attention, and one of which resulted in head trauma so severe it required eight stitches. The BIA's finding that the "thefts and beatings [Charlie] suffered as a result of incidents in which racial epithets were directed at him do not aggregately rise to the level of persecution" directly contradicts our precedent. *See Hoxha v. Ashcroft*, 319 F.3d 1179, 1182 n.5 (9th Cir. 2003) ("Physical violence ordinarily meets the requirement of severity that characterizes persecution as opposed to mere discrimination."). Thus, the evidence compels the conclusion that the harm Charlie suffered rose to the level of persecution, and the BIA erred in finding otherwise. Because Charlie is entitled to a presumption of future persecution that the government did not attempt to rebut, Charlie has demonstrated that it is "more likely than not" that he would be persecuted if he returned to Indonesia.

2. The BIA erred in concluding that because each of Charlie's attacks was in public, and because several attacks followed traffic accidents and resulted in theft, Charlie's attacks were "random[]" and not motivated by his Chinese ethnicity. Charlie, whose testimony was deemed credible by the agency, testified that during each of his attacks his assailants shouted racial insults at him, and that on at least one occasion he was the only ethnic Chinese person present. Therefore, the unrefuted evidence in the record compels the conclusion that Charlie's Chinese ethnicity was one central reason for each attack. *See Gafoor v. INS*, 231 F.3d 645, 651–52 (9th Cir. 2000) (holding that Fijian soldiers' statements to Gafoor to "go back to India" were "unmistakable circumstantial evidence that [the attacks] were motivated by his race and imputed political opinion"), *superseded by statute on other grounds as stated in Parussimova v. Mukasey*, 555 F.3d 734, 739–40 (9th Cir. 2009); *Baballah v. Ashcroft*, 367 F.3d 1067, 1077 (9th Cir. 2004) (noting that an applicant's "[u]ncontroverted and credible testimony is sufficient to establish that [he] was persecuted on account of ethnicity"). That Charlie's attacks culminated in theft does not mean that his Chinese ethnicity was not "one central reason" for his attacks. Indeed, "persecution may be caused by more than one central reason, and an asylum applicant need not prove which reason was dominant." *Parussimova*, 555 F.3d at 741. Charlie sufficiently established that the

3

persecution he suffered was "on account of" his Chinese ethnicity. Moreover, because Charlie meets the more stringent "one central reason" requirement governing asylum, he has necessarily met the "a reason" standard required for entitlement to withholding. *See Barajas-Romero v. Lynch*, 846 F.3d 351, 360 (9th Cir. 2017).

3. Charlie successfully established that the source of his persecution was the government, or a force the government is unwilling or unable to control. *See Siong v. INS*, 376 F.3d 1030, 1039 (9th Cir. 2004). Charlie credibly testified that on one occasion, he was threatened and extorted by a native Indonesian police officer. Moreover, Charlie credibly and repeatedly testified that it is well known that the police in Indonesia turn a blind eye to harm perpetrated against the ethnic Chinese minority by Indonesian natives. Charlie recounted several instances in which he and his family sought help from the authorities but were turned away. The evidence therefore compels the conclusion that the Indonesian government is unwilling and unable to control persecution against the ethnic Chinese.

4. Substantial evidence supports the BIA's determination that Charlie failed to demonstrate eligibility for CAT protection. While the beatings, thefts, threats, and harassment Charlie and his family suffered constituted persecution, our precedent requires a more severe showing of suffering to compel a finding of past

4

torture.  *See Kumar v. Gonzales*, 444 F.3d 1043, 1055–56 (9th Cir. 2006)*;*

*Khudaverdyan v. Holder*, 778 F.3d 1101, 1109 n.7 (9th Cir. 2015).  Moreover,

based on the existing record, we cannot say that it is "more likely than not" that

Charlie wold be tortured upon his return to Indonesia.  *See* 8 C.F.R. § 208.16(c)(2).

**PETITION FOR REVIEW GRANTED AND REMANDED IN PART;**

**DENIED IN PART.**