NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

DEC 16 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| NANCY JUDITH CABRERA-LOPEZ, | No. 19-70381 |
| Petitioner, | Agency No. A216-179-822 |
| v. | |
| WILLIAM P. BARR, Attorney General, | MEMORANDUM[*] |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted November 19, 2020
Pasadena, California

Before:  PAEZ and VANDYKE, Circuit Judges, and IMMERGUT,[**] District Judge.

Petitioner Nancy Cabrera-Lopez ("Cabrera-Lopez"), a citizen of Guatemala, seeks review of a decision by the Board of Immigration Appeals ("BIA") dismissing her appeal of an Immigration Judge's ("IJ") decision denying her application for asylum, withholding of removal, and protection under the

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]    The Honorable Karin J. Immergut, United States District Judge for the District of Oregon, sitting by designation.

implementing regulations to the Convention Against Torture ("CAT"). We have jurisdiction under 8 U.S.C. § 1252, and we deny the petition.

1. Substantial evidence supports the BIA's finding that Cabrera-Lopez failed to establish a nexus between the persecution alleged and her family membership. *See Parussimova v. Mukasey*, 555 F.3d 734, 739 (9th Cir. 2009) (findings regarding a persecutor's motive are reviewed for substantial evidence). The record does not compel the conclusion that Cabrera-Lopez's family membership was "a reason" or "one central reason" for the threatening text messages she received following her daughter's 2013 murder, the physical assault she suffered several years later in 2017, or any other harms described in her application. *See Barajas-Romero v. Lynch*, 846 F.3d 351, 357–60 (9th Cir. 2017) (discussing 8 U.S.C. § 1231(b)(3)(C)'s "a reason" standard for withholding of removal and 8 U.S.C. § 1158(b)(1)(B)(i)'s "one central reason" standard for asylum); 8 U.S.C. § 1252(b)(4)(B) ("administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary").

Cabrera-Lopez's testimony indicated that the threatening texts she received were specifically tied to the demand that she stop investigating her daughter's murder. There is no indication in the record that Cabrera-Lopez's husband or other seven children were similarly contacted with threats in the wake of her daughter's death. Indeed, her husband and most of their children have remained in her

2

hometown, unharmed, since she left. While the text threats were related to the murder of Cabrera-Lopez's family member, substantial evidence supports the conclusion that her family membership itself did not motivate the threats.

The record does not establish anything about the motivation behind the 2017 attack. Cabrera-Lopez does not know the identity of her attacker. She claims the attacker threatened to kill her children unless she went "away" but did not explain why he wanted her to leave. Although Cabrera-Lopez may plausibly believe the attack was motivated by her family membership, the BIA's determination that the attacker simply wanted her to cease investigating her daughter's death is supported by substantial evidence.

Finally, nothing in the record suggests other past hardships described in Cabrera-Lopez's application were connected to the threatening texts or the 2017 assault in any way. Thus, substantial evidence supports the finding that Cabrera-Lopez failed to establish a nexus between her family membership and the harm she suffered.

2. The BIA did not err in declining to consider the two proposed particular social groups that Cabrera-Lopez raised for the first time on appeal. *See Honcharov v. Barr*, 924 F.3d 1293, 1296 (9th Cir. 2019) (per curiam) ("the [BIA] may apply a procedural default rule to arguments raised for the first time on appeal"). Cabrera-Lopez does not claim to have raised the two proposed social

groups before the IJ. Rather, she acknowledges that she raised them for the first time before the BIA as "examples" of the types of social groups the IJ should have identified and raised for her based on her testimony. Because the BIA may apply a procedural default rule in such circumstances, it did not err in declining to consider the proposed social groups articulated for the first time on appeal.[1]

3. Substantial evidence supports the BIA's conclusion that Cabrera-Lopez failed to meet her burden of establishing eligibility for protection under the CAT. The record does not compel the conclusion that Cabrera-Lopez will "more likely than not be tortured" if returned to Guatemala, or that the government of Guatemala would consent or acquiesce in any potential torture. *See Xochihua-Jaimes v. Barr*, 962 F.3d 1175, 1183 (9th Cir. 2020) ("To be eligible for relief under CAT, an applicant bears the burden of establishing that she will more likely than not be tortured with the consent or acquiescence of a public official if removed to her native country.").

Although the record reflects that Cabrera-Lopez was physically assaulted in 2017, there is no indication that she sustained any physical injuries from the

---

[1] Cabrera-Lopez also challenges the BIA's determination that her asylum and withholding of removal claims fail because she did not establish that the Guatemalan government would be unwilling or unable to protect her or that internal relocation within Guatemala was infeasible. Because we affirm the BIA's dispositive ruling that Cabrera-Lopez's asylum and withholding of removal claims did not meet the nexus requirement, we decline to consider these issues.

encounter. Further, while the threatening messages she received surely caused Cabrera-Lopez emotional distress, substantial evidence supports the IJ and BIA's conclusion that the resulting mental pain did not rise to the level of torture. The record also does not compel a finding that the government of Guatemala would acquiesce if Cabrera-Lopez were to be tortured.

4. The manner in which the IJ conducted Cabrera-Lopez's proceedings and the BIA adjudicated her appeal did not violate due process. "A due process violation occurs where '(1) the proceeding was so fundamentally unfair that the alien was prevented from reasonably presenting [her] case, and (2) the alien demonstrates prejudice, which means that the outcome of the proceeding may have been affected by the alleged violation.'" *Lacsina Pangilinan v. Holder*, 568 F.3d 708, 709 (9th Cir. 2009) (citation omitted).

The record shows that, over the course of five hearings spanning almost five months, the IJs involved in Cabrera-Lopez's case advised her of her rights and the requirements for relief, and asked probing questions to develop an adequate record. All hearings were conducted with the assistance of a Spanish interpreter. At Cabrera-Lopez's first hearing, an IJ advised her of her right to counsel at no expense to the government and provided her with a list of pro bono counsel. At the same hearing, the IJ informed her that she had the right to review and object to any documents submitted by the government, the right to submit her own evidence and

5

call witnesses, and the right to cross-examine any government witnesses. The IJ also offered a general description of what Cabrera-Lopez had to prove in order to establish eligibility for relief. Cabrera-Lopez indicated that she understood the rights advisal, did not want to reschedule the hearing to hire a lawyer, and waived her right to have a lawyer present to represent her.

Cabrera-Lopez's case was continued several times before her merits hearing, providing her ample time to compile any additional support for her application that she planned to present. At the merits hearing, the IJ asked Cabrera-Lopez probing questions to see if she qualified for relief. Based on the testimony elicited, the IJ herself raised the possibility of family membership as a particular social group and considered whether it applied in Cabrera-Lopez's case.

Cabrera-Lopez's arguments that the IJ exhibited bias are not supported in the record. The IJ asked Cabrera-Lopez relevant questions about her claims, sua sponte raised and considered family membership as a particular social group, and made findings that were supported by the record. The IJ was not required to identify a particular social group for Cabrera-Lopez that was not presented by the evidence. *See Valencia v. Mukasey*, 548 F.3d 1261, 1262–63 (9th Cir. 2008) ("An alien has no blanket right to be advised of the possibility of asylum or other relief …."); *Agyeman v. INS*, 296 F.3d 871, 884 (9th Cir. 2002 ("The IJ must be responsive to the particular circumstances of the case ….").

Cabrera-Lopez's right to due process was also not violated by the BIA's adjudication of her appeal before she received the full administrative record. Cabrera-Lopez's brief on appeal to the BIA cites the transcripts of the hearings and the IJ's oral decision, making clear that her counsel had access to those documents. The record also shows that Cabrera-Lopez was served copies of the NTA, I-213, and the State Department's Guatemala 2017 Human Rights Report.

Cabrera-Lopez claims she could have made further arguments had her counsel had access to the full record. However, the only evidence she points to that was not already covered in her testimony is an attack on her partner that she does not assert was related to the other harms she faced. This evidence does not demonstrate that the outcome of her case may have been affected by the BIA's adjudication of her appeal before counsel had the full record. Thus, prejudice has not been established.

Accordingly, Cabrera-Lopez's due process rights were not violated, and the BIA's decision was supported by substantial evidence.

**PETITION DENIED**.