**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

MAR 18 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| ELVIA ESTELA VELASQUEZ-MARTINEZ, | No.   19-72741 |
| Petitioner, | Agency No. A206-475-836 |
| v. | MEMORANDUM[*] |
| MERRICK GARLAND, Attorney General, | |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted February 2, 2021
San Francisco, California

Before:  THOMAS, Chief Judge, and IKUTA and NGUYEN, Circuit Judges.
Dissent by Judge IKUTA

Elvia Estela Velasquez-Martinez, a native and citizen of Honduras, applied

for asylum, withholding of removal, and protection under the Convention Against

Torture (CAT).  The Immigration Judge (IJ) denied relief, and the Board of

Immigration Appeals (BIA) dismissed the appeal.  Velasquez-Martinez now

petitions for review.  We have jurisdiction under 8 U.S.C. § 1252(a), and we grant

---

[*]       This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

the petition and remand for further consideration.

1.     Before the BIA, Velasquez-Martinez asserted that she should be excused from the one-year asylum filing deadline at 8 U.S.C. § 1158(a)(2)(B) as a class member in *Mendez Rojas v. Wolf*, No. 2:16-cv-01024 (W.D. Wash. filed June 30, 2016).  Though the district court's summary judgment order was stayed when the BIA issued a decision in Velasquez-Martinez's appeal, the defendants, including the Executive Office for Immigration Review, had agreed, pursuant to an interim stay agreement, "to find all class members' asylum applications were timely filed in pending adjudications before . . . the Board of Immigration Appeals . . . during the stay."  *See* Interim Stay Agreement, *Mendez Rojas v. Wolf*, No. 2:16-cv-01024, at *1 (W.D. Wash. Aug. 2, 2018), ECF 69-1.[1]  Because the BIA failed to address Velasquez-Martinez's assertion of class membership, we remand for consideration of Velasquez-Martinez's claim.  *See Sagaydak v. Gonzales*, 405

---

[1] We disagree with the dissent's view that Velasquez-Martinez failed to exhaust her *Mendez Rojas* argument before the BIA.  Exhaustion requires a legal claim to be sufficiently raised so as "to put the BIA on notice of what was being challenged."  *Bare v. Barr*, 975 F.3d 952, 960 (9th Cir. 2020).  Velasquez-Martinez put the BIA on notice that she believed she warranted an exception to the one-year filing deadline under *Mendez Rojas*.  Because the BIA was on notice, it could not ignore her argument and was required to address it consistently with the binding stay agreement.  *See Sagaydak v. Gonzales*, 405 F.3d 1035, 1040 (9th Cir. 2005) ("[T]he BIA [is] not free to ignore arguments raised by a petitioner.").

F.3d 1035, 1040 (9th Cir. 2005).[2]

2.      Velasquez-Martinez argues that the BIA erred in holding that her proffered particular social group, "female victims of gender-based violence," is impermissibly circular.[3]  We review legal questions de novo.  *Arrey v. Barr*, 916 F.3d 1149, 1157 (9th Cir. 2019).  "[T]he conclusion that a proposed social group is impermissibly circular may not be reached summarily merely because the proposed group mentions harm."  *Diaz-Reynoso v. Barr*, 968 F.3d 1070, 1086 (9th Cir. 2020).  Instead, the BIA must conduct a "rigorous analysis," *id.* at 1079 (quoting *Matter of A-B-*, 27 I. & N. Dec. 316, 340 (A.G. 2018)), and consider on a case-by-case basis "whether [the] group is cognizable if it is defined without reference to the fact of persecution," *id.* at 1080.

The BIA's analysis here suffers from the same flaw as the BIA decision in *Diaz-Reynoso*.  In one sentence and citing *Matter of A-B-*, the BIA summarily found Velasquez-Martinez's proffered social group not cognizable because it "does not 'exist independently' of the harm asserted."  Therefore, we remand so the BIA

---

[2] We cannot rely, as the dissent would, "on a ground upon which [the BIA] did not rely."  *Arrey v. Barr*, 916 F.3d 1149, 1157 (9th Cir. 2019) (quoting *Navas v. INS*, 217 F.3d 646, 658 n.16 (9th Cir. 2000).

[3] The BIA described this particular social group as "female victims of violence," but we use Velasquez-Martinez's formulation.  Under either formulation, the BIA erred when it failed to consider whether the group was cognizable without reference to the harm suffered.  *See Diaz-Reynoso*, 968 F.3d at 1080.

can determine in the first instance whether Velasquez-Martinez's proposed social group is cognizable without reference to the persecution. *See id.* at 1080, 1088.

3.      Velasquez-Martinez next argues that the BIA erred when it alternatively concluded that she was not harmed on account of her membership in two particular social groups: "female victims of gender-based violence" and "females in Honduras."[4]  We review factual findings, such as those underlying the denial of asylum, withholding, and relief under CAT, for substantial evidence. *Arrey*, 916 F.3d at 1157.

As a threshold matter, and contrary to the dissent's assertion, Velasquez-Martinez exhausted her nexus argument, including the argument that the harm she suffered while captive was on account of a protected ground.  Though Velasquez-Martinez did not present an extensive nexus argument before the BIA, she did state that the IJ erred in finding that the persecution she suffered in Honduras, "including being raped," was not on account of a protected ground.  This put the BIA on notice of the argument that Velasquez-Martinez was harmed while captive on account of her membership in a protected group. *See Martinez v. Barr*, 941 F.3d 907, 922 ("[W]e do not employ the exhaustion doctrine in a formalistic manner, but rather inquire into whether the issue was before the BIA such that it

---

[4] The BIA characterized this particular social group as "females," but we use the IJ's formulation.

had the opportunity to correct its error.") (quoting *Figueroa v. Mukasey*, 543 F.3d 487, 492 (9th Cir. 2008)).

On the merits, the BIA erred by failing to consider if the sexual violence Velasquez-Martinez suffered while captive was on account of a protected ground. *See, e.g.*, *Barajas-Romero v. Lynch*, 846 F.3d 351, 360 (9th Cir. 2017) (remanding nexus determination in a withholding case where the petitioner was initially kidnapped and tortured for extortion, but "[t]he torture became much worse after [he] voiced his anti-corruption opinion"); *cf. Parussimova v. Mukasey*, 555 F.3d 734, 742 (9th Cir. 2009) ("In this case, however, it is simply not clear whether [a protected ground] caused the assailants to initiate their attack or *increase its severity* once it had begun.") (emphasis added).

Several pieces of evidence from the time while Velasquez-Martinez was captive indicate that she was likely persecuted on account of her gender, a key component of both particular social groups. First, the captors singled out Velasquez-Martinez and the other female captive for specific forms of harm, including sexual violence, abuses that none of the captive men suffered. *See, e.g.*, *Mengstu v. Holder*, 560 F.3d 1055, 1059 (9th Cir. 2009), *superseded in part by statute*, REAL ID Act of 2005, Pub. L. No. 109–13 div. B, 119 Stat. 302, *as*

5

*recognized in Parussimova*, 555 F.3d at 740.[5]  Second, other than gender, there is no identifiable difference between the captive women and men to account for the fact that the captors committed sexual violence against both women and none of the men.  *See Li v. Holder*, 559 F.3d 1096, 1112 (9th Cir. 2009) (pre-REAL ID application); *Navas v. INS*, 217 F.3d 646, 660–61 (9th Cir. 2000) (pre-REAL ID application).  Third, one of the captors used a gender-based slur while raping Velasquez-Martinez.  *See, e.g.*, *Sinha v. Holder*, 564 F.3d 1015, 1021–22 (9th Cir. 2009) (pre-REAL ID application).  And finally, the record documents pervasive violence against women in Honduras, which also supports a nexus finding.  *See, e.g.*, *Ndom v. Ashcroft*, 384 F.3d 743, 754–56 (9th Cir. 2004) (pre-REAL ID application).  Because the BIA failed to consider this "highly probative [and] potentially dispositive" evidence, we remand for consideration of whether Velasquez-Martinez was persecuted while captive on account of her membership in one of the asserted particular social groups.  *See Cole v. Holder*, 659 F.3d 762, 772 (9th Cir. 2011).

4.  Finally, Velasquez-Martinez contests the BIA's finding that she did not establish that the government was more likely than not to acquiesce in her

_____

[5] Though the REAL ID Act, which governs this case, imposed a "more onerous" nexus standard, *see Parussimova*, 555 F.3d at 740, pre-REAL ID caselaw remains instructive to the extent it shows what evidence is relevant to a persecutor's motive.

torture as necessary to qualify for CAT protection.  While the Honduran government's inability to prevent violence against women is not sufficient to constitute acquiescence, *see Garcia-Milian v. Holder*, 755 F.3d 1026, 1034 (9th Cir. 2014), the BIA nevertheless erred when it failed to give reasoned consideration to other record evidence, including an expert declaration that indicates the Honduran government is not just ineffective at preventing this violence but is also complicit in and turns a blind eye to it.  For example, the report notes that "police themselves have committed violent and degrading acts against women" and that "Honduran police ignore threats made against women."  We therefore remand for the BIA to consider Velasquez-Martinez's CAT claim in light of this evidence.  *See Cole*, 659 F.3d at 772–73 (holding that the BIA "did not evidence reasoned consideration" of the evidence where it failed to address expert testimony).

**PETITION GRANTED.**

*Velasquez-Martinez v. Garland*, No. 19-72741
IKUTA, Circuit Judge, dissenting:

Velasquez-Martinez missed the statutory deadline for applying for asylum. And the BIA's determination that Velasquez-Martinez failed to establish that she was persecuted on account of her membership in a particular social group ("female victims of violence") is legally correct and supported by substantial evidence. The majority bases its conclusion to the contrary on arguments that are unexhausted or meritless. Therefore I dissent.

1

Velasquez-Martinez was three years late in filing her asylum application. As required by statute, 8 U.S.C. § 1158(a)(1), the IJ denied her asylum application.

At the time of the IJ's decision on Velasquez-Martinez's asylum application, a class action was pending in a Washington district court. *Mendez Rojas v. Johnson*, No. 2: 16-cv-0 1024-RSM (W.D. Wash.). The plaintiffs—classes of asylum seekers who had been or would be detained by the government but were not given notice of the one-year deadline for filing their asylum application—claimed that the government was legally required to give them notice of the one year deadline. According to these aliens, the government's failure to do so violated their constitutional rights.

Some time after the IJ denied Velasquez-Martinez's asylum claim on

timeliness grounds, the district court in *Mendez Rojas* held that the government had to provide the plaintiffs notice of the one-year deadline. Order Granting Motion for Summary Judgment, *Mendez Rojas*, ECF No. 64 (March 29, 2018). The district court also ordered the government "to accept as timely filed any asylum application from a class member" even if it was filed after the one-year deadline, *id.* at 17, even though such an order is contrary to the statutory requirement that an alien may apply for asylum only if the alien "demonstrates by clear and convincing evidence that the [asylum] application has been filed within 1 year after the date of the alien's arrival in the United States," 8 U.S.C. § 1158(a)(2)(B). While an appeal of this ruling was pending before a panel of this court, however, the parties agreed to stay the proceedings for settlement discussions and agreed that class members' late-filed asylum applications would be deemed timely during the stay. The district court granted the parties' joint stay motion. Order Granting Joint Stipulated Motion to Stay Proceedings, *Mendez Rojas*, ECF No. 70 (Aug. 2, 2018).

After this stay took effect, Velasquez-Martinez filed an appeal brief to the BIA, referencing the now-stayed litigation. Velasquez-Martinez's entire argument on the effect of this litigation on her appeal is contained in a single sentence: "Respondent contends that pursuant to *Mendez-Rojas v. Johnson*, No. 2: 16-cv-0 1024-RSM (W.D. Wash), the one-year filing deadline does not apply to her and

2

that she qualifies for asylum." Velasquez-Martinez did not distinctly argue that she qualified as a member of any of the classes of aliens referenced in the stayed *Mendez-Rojas* summary judgment order. Nor does the record contain sufficient evidence to establish that Velasquez-Martinez was such a member, and the BIA is precluded from factfinding. 8 C.F.R. § 1003.1(d)(3)(iv) (Sept. 26, 2019). Therefore, the BIA did not err in concluding that Velasquez-Martinez was not entitled to asylum relief.

Moreover, Velasquez-Martinez failed to raise the new argument developed by the majority that the BIA should have taken judicial notice of the government's agreement to treat class members' late asylum applications as timely during an interim stay period. Contrary to the majority, Majority at 2, n.1, Velasquez-Martinez failed to give the BIA any notice of the existence of the Interim Stay Agreement signed by the government pending further litigation in *Mendez Rojas*. Such an argument, therefore, is unexhausted.[1] In holding otherwise, the majority leaps over all legal and factual insufficiencies to afford Velasquez-Martinez a chance at relief not allowed by statute.

2

---

[1] Velasquez-Martinez did not ask the BIA to remand or move to reopen before the IJ to resolve her class membership claim.

I also disagree with the majority's conclusory determination that the BIA erred in rejecting her claim that she was a member of a "particular social group," for purposes of 8 U.S.C. § 1101(a)(42), which she defined to the BIA as "female victims of violence."[2]

An applicant for relief from removal must establish that the claimed particular social group is "(1) composed of members who share a common immutable characteristic, (2) defined with particularity, and (3) socially distinct within the society in question." *Reyes v. Lynch*, 842 F.3d 1125, 1131 (9th Cir. 2016) (quoting *Matter of M–E–V–G–*, 26 I. & N. Dec. 227, 237 (BIA 2014)). "[T]he focus of the particularity requirement is whether the group is discrete," *id.* (citation omitted), meaning that it has "clear boundaries and that its characteristics have commonly accepted definitions," *id.* at 1135. The BIA must take an individualized approach to determining whether an alien is a member of a particular social group. *Id.*

While we recently recognized that the mere "mention of feared persecution" does not categorically disqualify an "otherwise cognizable social group,"

---

[2] Contrary to the majority's claim, the BIA described the particular social group as "female victims of violence" because that was how Velasquez-Martinez formulated it to the BIA. The majority's reference to testimony before the IJ is irrelevant.

*Diaz-Reynoso v. Barr*, 968 F.3d 1070, 1084–85 (9th Cir. 2020), the BIA did not make this error here. Rather, the BIA held that Velasquez-Martinez's claimed particular social group of "female victims of violence," was not cognizable because it does not "exist independently of the harm asserted." Without reference to "violence," the proposed group consists of females, which is too amorphous and general to meet the particularity requirement. This is consistent with *Diaz-Reynoso*, which held that "a particular social group must exist independently of the harm asserted," *id.* at 1080. In rejecting the BIA's conclusion, it is the majority that failed to conduct a rigorous analysis.

3

The majority also errs in concluding that "the Agency erred by failing to consider if the sexual violence Velasquez-Martinez suffered *while captive* was on account of" her membership in a particular social group. The majority bases this ruling on its own inventive argument that because the male kidnappers raped the women and beat the men, the women were persecuted on account of their membership in a particular social group. Although this argument is baseless, we lack jurisdiction to address it in any event, because Velasquez-Martinez's brief to the BIA does not raise the novel argument that after kidnapping Velasquez-Martinez and her male friends, the kidnappers were motivated to persecute her on

5

account of her membership in a particular social group of female victims of violence. Therefore it is not exhausted. *See Barron v. Ashcroft*, 358 F.3d 674, 678 (9th Cir. 2004) (no subject-matter jurisdiction over legal claims not presented in administrative proceedings below).

4

Finally, the BIA did not err in rejecting Velasquez-Martinez's CAT claim. Based on the evidence in the record, substantial evidence supports the BIA's determination that the IJ did not err in "concluding that [Velasquez-Martinez] had not met her burden of proof for protection under the Convention Against Torture." The majority chooses to focus on an expert report not discussed by Velasquez-Martinez, but that report focuses primarily on arguments that the government has failed to do enough to protect women, and does not compel the finding that the kidnappers' violence against petitioner was carried out "with the consent or acquiescence of a public official acting in an official capacity." 8 C.F.R. § 208.18; *Garcia-Milian v. Holder*, 755 F.3d 1026, 1033–35 (9th Cir. 2014). Further, because Velasquez-Martinez's sole argument to the BIA on this point was that she had "provided substantial evidence of the Honduran government's inability to protect female victims of persecution," the BIA did not err in addressing this argument; this does not suggest, as the majority claims, that the BIA failed to give

6

reasoned consideration to other record evidence. *See Larita-Martinez v. INS*, 220 F.3d 1092, 1095–96 (9th Cir. 2000) (holding that we presume that the BIA considered all relevant evidence).

Instead of creating arguments for petitioners, we should base our conclusions on the arguments that were before the BIA. I therefore respectfully dissent.