NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FEB 5 2026

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| LIBARDO RIVEROS LEON; EDNA BRIGITTE DIAZ VARGAS; S. J. R. D.; Y. R. D., <br><br> Petitioners, <br><br> v. <br><br> PAMELA BONDI, Attorney General, <br><br> Respondent. | No. 24-4131 <br><br> Agency Nos. <br> A240-055-295 <br> A240-493-797 <br> A240-493-798 <br> A240-493-799 <br><br> MEMORANDUM[*] |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted November 13, 2025
San Francisco, California

Before: FRIEDLAND and SUNG, Circuit Judges, and PITTS, District Judge.[**]
Partial Concurrence and Partial Dissent by Judge FRIEDLAND.

Libardo Riveros Leon, his wife, and their children, natives and citizens of

Colombia, petition for review of a decision by the Board of Immigration Appeals

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The Honorable P. Casey Pitts, United States District Judge for the Northern District of California, sitting by designation.

("BIA") dismissing their appeal from the Immigration Judge's ("IJ's") denial of their applications for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). We have jurisdiction under 8 U.S.C. § 1252(a)(1). We grant the petition in part and remand for further proceedings.

Because the BIA adopted and affirmed the IJ's decision, citing *Matter of Burbano*, 20 I. & N. Dec. 872 (BIA 1994), we review both the IJ's and BIA's decisions. *Cruz v. Bondi*, 146 F.4th 730, 737 (9th Cir. 2025). We review the agency's factual findings for substantial evidence, *Cordoba v. Barr*, 962 F.3d 479, 481 (9th Cir. 2020), and we review legal questions de novo, *Perez-Portillo v. Garland*, 56 F.4th 788, 792 (9th Cir. 2022).

The agency denied Riveros Leon's asylum claim on two grounds, both of which Riveros Leon challenges. First, it concluded that he did not establish that his political opinion was "one central reason" that FARC agents harmed him. Second, it concluded that he did not show that FARC agents were private actors that the government was unwilling or unable to control.

1. The agency erred in concluding that Riveros Leon's anti-FARC political opinion was not "a central reason" that FARC harmed him. The agency concluded that his political opinion did not qualify as "one central reason" because: (1) the unprotected motive—his automotive skills—was the "primary motivation," and (2) the protected motive—his political opinion—was not a "but for" cause of the

24-4131

persecution. 8 U.S.C. § 1158(b)(1)(B)(i). The agency's reasoning was legally erroneous.

First, when the agency determined there was no nexus to Riveros Leon's political opinion because FARC's "primary motivation" was the unprotected motive, the agency implied that there can be only one primary reason, or that Riveros Leon must show that the protected reason is the dominant reason. Both implications are incorrect. There can be more than one "primary" reason. *Manzano v. Garland*, 104 F.4th 1202, 1211 (9th Cir. 2024) ("We have repeatedly acknowledged a persecutor may have more than one central reason so long as both are of primary importance."). Further, a petitioner "need not prove which reason is dominant." *Id.* at 1207 (quoting *Parussimova v. Mukasey*, 555 F.3d 734, 741 (9th Cir. 2009)).

Second, the agency's reasoning assumes that, if a motive is not the exclusive or dominant "primary motivation," then it must be a "but-for cause" to qualify as "one central reason." That is also incorrect. "We have acknowledged at least two ways to demonstrate the causal link required to meet the 'one central reason' standard in a mixed-motives case." *Id.* First, a motive qualifies as a central reason if it is a "but-for cause" that is more than incidental or tangential. *Id.* Second, a motive qualifies as a central reason if that motive, standing alone, would have led the persecutor to harm the applicant—even if it is *not* a but-for cause. *Id.* at 1207-

3
24-4131

09. In other words, a motive may qualify as "a central reason" so long as it was "sufficient to cause the harm"—even if it was (1) not the *only* primary reason, (2) not the *dominant* primary reason, and (3) not a "but-for cause." *Id.* Here, the agency failed to consider whether Riveros Leon's political opinion was a sufficient reason for the harm, even if it was neither the dominant reason nor a but-for cause.

Additionally, "we have explicitly recognized the viability of an 'extortion-plus' claim" "[a]s a subset of these mixed-motive cases." *Id.* at 1207. "A petitioner who has been the victim of extortion may satisfy the nexus requirement if the petitioner was independently targeted, not just for money, but also because of a protected ground." *Id.* (cleaned up).

Here, the record compels the conclusion that FARC independently targeted Riveros Leon, not just because of his automotive skills, but also because of his anti-FARC political opinion. The first time FARC threatened to harm Riveros Leon, it was only to stop him from supporting former-FARC youth—it did not attempt to recruit Riveros Leon. When FARC members later attempted to recruit Riveros Leon, they said they would harm him and his family because of his work with youth *unless* he helped FARC's cause. While FARC members repeatedly stated that, to avoid additional harm, Riveros Leon needed to help them, they also repeatedly stated that he needed to stop his anti-FARC activities, including working with youth and attending Democratic Center political meetings. And

24-4131

Riveros Leon repeatedly told FARC he would not help them because he did not agree with their political ideology. Because the record compels the conclusion that FARC would not have targeted Riveros Leon but for his political opinion, and that this but-for cause played more than a minor role in the harm he suffered, we conclude that his political opinion was "a central reason" for the harm. Therefore, Riveros Leon established the nexus required for his asylum claim.

2. The agency also erred when it concluded that Riveros Leon did not establish that the government was unwilling or unable to protect him from private persecutors. The IJ concluded that Riveros Leon did not meet his burden to establish that the Colombian government was unable or unwilling to control the men who harmed him, citing *Castro-Perez v. Gonzales*, 409 F.3d 1069, 1072 (9th Cir. 2005), and noting that a "failure to report non-governmental persecution due to [a] belief that [the] police would do nothing" does not meet that burden. The IJ erred by applying the evidentiary standard we apply when petitioners fail to report to the police at all because the record compels the finding that Riveros Leon reported that FARC kidnapped and threatened him to the police.

Indeed, the IJ acknowledged that Riveros Leon and his wife reported FARC to the police but the police "did not want to take [his] complaint," and Riveros Leon did not "insist that [the police] initiate an investigation." In the IJ's view, Riveros Leon's experience with the police was "not probative of whether police

5 24-4131

were unable or unwilling to help him because he did not *follow through* on filing a police report." (Emphasis added.) That was error. The fact that Riveros Leon did not "insist" that the police investigate—despite the police's unwillingness to even take his complaint—does not somehow negate the fact that Riveros Leon sought help from the police and they refused to provide it.[1] When a petitioner seeks police help and the police refuse to take action, the petitioner is not required to "insist" on police action to demonstrate that he sought help from the police. To the contrary, evidence that the police did not want to take a complaint is highly probative of police unwillingness or inability to help. *See, e.g.*, *Faruk v. Ashcroft*, 378 F.3d 940, 942-44 (9th Cir. 2004) (petitioner called the police about repeated stone-throwing, but police would not file a report). Viewed correctly, evidence that the police responded to Riveros Leon's request for help by indicating they could not or would not help him and declining to file a formal report, coupled with his country

---

[1] We disagree with the concurrence's suggestion that the record is ambiguous about whether the police refused to take Riveros Leon's complaint. After Riveros Leon described the kidnapping, the police officer said they needed "evidence that had happened to [him]." When Riveros Leon explained he did not have any physical evidence, the officer "stood up." Riveros Leon's wife started "begging [the officer] to please to help us and we were victims of kidnapping." But the officer responded dismissively by pointing out that "really [Riveros Leon] was talking about kidnapping, but [he] was there." Riveros Leon's "wife got upset and told [the officer] that in our country that happens because they don't pay attention to us, the people. The poor ones." The fact that the police "did not want to take [Riveros Leon's] complaint" despite their pleas for help compels the conclusion that Riveros Leon and his wife sought police assistance and the police were unwilling or unable to provide it.

conditions evidence, compels the conclusion that the police were unwilling or unable to control the FARC members who harmed Riveros Leon. *See, e.g.*, *Diaz v. Bondi*, 129 F.4th 546, 555 (9th Cir. 2025); *Davila v. Barr*, 968 F.3d 1136, 1143 (9th Cir. 2020); *Bringas-Rodriguez v. Sessions*, 850 F.3d 1051, 1063 (9th Cir. 2017) (in "instances of police failure to respond to a report of persecution," a noncitizen has met his burden of showing that the government was unable or unwilling to control persecutors).[2]

Accordingly, we reverse the agency's conclusion that Riveros Leon failed to establish past persecution.

3. Substantial evidence supports the agency's determination that the harm Riveros Leon and his family suffered did not rise to the level of torture for relief under CAT. The record demonstrates that the abuse they suffered, while serious, was not extreme enough to meet the definition of torture. The agency also reasonably determined that Riveros Leon and his family did not establish that the

---

[2] The government submitted a Rule 28(j) letter citing *Matter of K-S-H-*, 29 I&N Dec. 307 (BIA 2025), a BIA decision that post-dates the agency decision here. Riveros Leon argues that *Matter of K-S-H-* is not entitled to *Skidmore* deference. We need not resolve this issue because the agency did not rely on *Matter of K-S-H-* in this case. We also note that, in *Matter of K-S-H-*, unlike here, the BIA recognized that the police declining to take a report is material evidence of government unwillingness or inability to protect an applicant. *K-S-H-*, 29 I&N Dec. at 308-09. Further, *Matter of K-S-H-* is materially distinguishable because it addresses only whether a single such incident is sufficient to show government unwillingness or inability to protect an applicant, whereas here, Riveros Leon's experience is corroborated by country conditions evidence.

government would acquiesce to any future torture, based on a review of country conditions evidence.

4. The agency's errors in its past persecution analysis require remand on its conclusions regarding all Petitioners' claims other than the CAT claims. The agency's determinations that (1) Riveros Leon did not establish a well-founded fear of future persecution; (2) he was not entitled to withholding of removal; (3) his wife and children's derivative claims failed; and (4) he did not qualify for humanitarian asylum, all depended on the agency's erroneous past persecution analysis. Thus, we remand. *Singh v. Garland*, 97 F.4th 597, 607-09 (9th Cir. 2024) (erroneously failing to find a presumption of past persecution results in improper burden shifting on internal relocation, requiring remand); *Corpeno-Romero v. Garland*, 120 F.4th 570, 581 (9th Cir. 2024) (a noncitizen who meets the "one central reason" standard for asylum "necessarily satisfie[s] the weaker 'a reason' standard for withholding of removal"); *Flores Molina v. Garland*, 37 F.4th 626, 638 (9th Cir. 2022) (failure to properly assess past persecution requires remand on humanitarian asylum).

We deny Riveros Leon's petition as to the agency's conclusion on CAT relief. But we grant the petition on all other claims. We reverse the agency's past persecution conclusions on nexus and government unwillingness or inability to protect Riveros Leon. We remand for reconsideration of Riveros Leon's well-

founded fear of future persecution, withholding of removal, and humanitarian asylum claims. We remand for consideration of his wife and children's derivative claims. On remand, the agency must treat the nexus and government unwilling and unable requirements for asylum and withholding of removal as satisfied.

**PETITION GRANTED IN PART AND DENIED IN PART; REVERSED AND REMANDED.**[3]

---

[3] Each party shall bear its own costs. Fed. R. App. P. 39(a).

*Riveros Leon v. Bondi*, No. 24-4131

FRIEDLAND, Circuit Judge, concurring in part and dissenting in part:

I agree with the majority that, in denying Riveros Leon's asylum claim, the agency appears to have applied the wrong legal standards to assess nexus and the government's unwillingness or inability to protect him from harm. I disagree, however, that the record compels the conclusion that Riveros Leon established both of those elements for purposes of his asylum claim. I would therefore remand for reconsideration using the proper legal standards, rather than requiring the agency to treat both elements as satisfied.[1]

With respect to nexus, I believe sufficient evidence supports the conclusion that Riveros Leon's political opinion was neither a sufficient nor a but-for cause of his persecution. The record contains ample evidence that FARC targeted Riveros Leon in an effort to exploit his skills in car assembly and repair. For instance, Riveros Leon testified that when FARC kidnapped him the first time, Vladimir asserted that he needed to "join" FARC because they "need[ed] [Riveros Leon] to provide [them] with information about [his car] company, and also repair (assemble) some cars, . . . that is all." And when FARC kidnapped Riveros Leon the second time, FARC took him to a warehouse full of cars, where they informed

---

[1] Because I agree with the majority that the agency erred in its past persecution analysis, I also agree that a remand for reconsideration is warranted on the agency's conclusions as to all other claims.

1

him that they wanted him to repair and modify certain trucks to hide illicit items, such as "[g]uns, grenades[,] and drugs." To be sure, FARC also took issue with Riveros Leon's anti-FARC political opinion. But in my view, it was not unreasonable for the agency to conclude that even if Riveros Leon had not harbored an anti-FARC political opinion, FARC's desire to use Riveros Leon's unique skill set was strong enough that FARC would have targeted him anyway.[2]

I believe sufficient evidence also supports the conclusion that Riveros Leon did not establish that the government was unwilling or unable to protect him. The majority maintains that the police declined to help Riveros Leon when he appeared to report his kidnapping. But I do not understand Riveros Leon's exchange with the police to be so clear cut. The police did not expressly decline to help Riveros Leon. Instead, when Riveros Leon reported the incident, the police requested "evidence and [a] description of the route," and Riveros Leon replied that he could not provide that because was blindfolded. The exchange apparently ended there: according to Riveros Leon, the police's questions "gave [him] the impression" that the police thought that his story was "not real," so Riveros Leon "did not insist" that the police "initiate an investigation." Riveros Leon's wife likewise attested

---

[2] Although I do not believe that the record compels the conclusion that Riveros Leon satisfied the "central reason" nexus standard for his asylum claim, I agree with the majority that he satisfied the "less demanding" "a reason" nexus standard for his withholding of removal claim. *Barajas-Romero v. Lynch*, 846 F.3d 351, 359-60 (9th Cir. 2017).

2

that they "did not insist" on an investigation based on the "expression of the police," so they left.

Riveros Leon and his wife undoubtedly subjectively believed that the police were unwilling to help, but the IJ was not required to accept their subjective beliefs about the officers' state of mind as true. *Cf. Garland v. Ming Dai*, 593 U.S. 357, 365-66 (2021) (rejecting that reviewing courts "must assume that [the petitioner's] factual contentions are true" absent an adverse credibility determination). Rather, as our cases recognize, whether the government is unwilling or unable to protect the petitioner generally turns on objective evidence, such as the police's express refusal to help, or their promise to help but subsequent inaction. *See, e.g.*, *Diaz v. Bondi*, 129 F.4th 546, 555 (9th Cir. 2025) (concluding that the police were unwilling or unable to help when "[t]he police allowed her to file a report but told her that they could not further assist her and could not guarantee her safety"); *Antonio v. Garland*, 58 F.4th 1067, 1077 (9th Cir. 2023) ("When the government has promised future action but taken none, we have concluded the government was either unable or unwilling to exercise such control."). Here, the police neither expressly refused to investigate, nor did they promise to help but fail to act. Given this and the brevity of the exchange, as well as the country conditions evidence indicating that the Colombian government had taken at least some action to combat

and prosecute FARC members, I do not think the record compels the conclusion that the police were unwilling or unable to control FARC.

Because I believe there is sufficient evidence in the record to support the agency's original conclusions on the nexus element for asylum and on the government's unwillingness or inability to protect Riveros Leon, I would not require the agency to treat those elements as satisfied on remand.